UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CEDRIC K. MERRITT,

                              Petitioner,

        -against-                                        9:14-CV-1481 (LEK)

P. CHAPPIUS, JR.,

                              Respondent.

_____

## DECISION and ORDER

## I.    INTRODUCTION

        Petitioner Cedric Merritt ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging a 2011 judgment of conviction, in the Supreme Court, Albany County, of burglary

in the second degree (N.Y. Penal Law ("Penal Law") § 140.25(2)) and petit larceny (Penal Law §

155.15).  Dkt. Nos. 1 ("Petition"); 7 ("Petitioner's Memorandum").  Respondent filed a Response to

the Petition along with pertinent records from the state court proceedings.  Dkt. Nos. 10

("Respondent's Memorandum"); 12 ("State Court Records").  Petitioner filed a Reply.  Dkt. No. 15

("Reply").  Also pending before the Court is Petitioner's combined Motion for discovery, an

evidentiary hearing, and appointment of counsel, with accompanying exhibits.  Dkt. Nos. 14

("Discovery Motion"); 14-4 ("Discovery Memorandum"); 14-5 ("Exhibits").  For the following

reasons, Petitioner's Motion is denied with prejudice and the Petition is denied and dismissed.[1]

## II.    BACKGROUND

        ### A.  Indictment and Pretrial Proceedings

_____

        [1] The Court, by text notice entered April 20, 2015, stated that any response to the Discovery
Motion should be filed by May 21, 2015.  On September 15, 2015, Respondent filed a letter brief,
Dkt. No. 16, as a response to the Discovery Motion.

Petitioner was charged by indictment with one count each of second-degree burglary, fourth-degree grand larceny (Penal Law § 155.30), and second-degree criminal impersonation (Penal Law § 190.25(1)) in relation to a theft from a residence. Dkt. No. 12-1 at SR 28-30.[2] As described in greater detail below, the complainants returned to their residence on February 21, 2010, discovered some of their property was missing, and filed a report with the Watervilet Police Department. Id. at SR 7-8. The following day, the same officer who took complainants' report executed a traffic stop of a vehicle in which Petitioner was a passenger. Id. at SR 8. The officer observed the items reported missing from complainants' apartment in the passenger compartment of the vehicle, and Petitioner was arrested in relation to that incident as well as an outstanding warrant. Id.

As is relevant to his claims in this proceeding, through counsel, Petitioner filed an omnibus motion and, in a decision and order on May 17, 2010, the trial court concluded that the evidence presented to the grand jury as to the criminal impersonation charge was legally insufficient and dismissed that count. Id. at SR 31-34. The court also directed the prosecution to furnish any existing Brady material and granted Petitioner's requests for Huntley and Mapp hearings. Id. at SR 33.

A combined Huntley/Mapp hearing was held on July 14, 2010. Dkt. No. 12-6 ("Huntley/Mapp Hearing Transcript") at 1.[3] On February 21, 2010, Anthony Harbour, a patrol officer with the City of Watervilet Police Department, responded to 609 23rd Street to investigate a burglary. Id. at 7. The complainants, who resided in the second-floor apartment of the building,

[2] Citations to the state court records at Docket Numbers 12-1 through 12-5 refer to the consecutive pagination, prefixed "SR," found at the top center of each page of those records.

[3] The transcript of the Huntley/Mapp hearing begins on page 9 of the pagination provided by CM/ECF, the court's electronic filing system. Citations to the hearing transcript refer to the transcript's original pagination.

reported that they had left home in the afternoon and, upon returning, discovered that a coin bank—unusual in design and made from an old post office box—as well as some jewelry were missing. <u>Id.</u> at 8-9. The items were taken from the bedroom of the apartment. <u>Id.</u> at 8.

The following evening, Harbour observed a vehicle with a missing headlight and executed a traffic stop a few blocks from complainants' apartment. <u>Id.</u> at 9-10. The driver, Erin Deyo, provided her license and registration. <u>Id.</u> at 10. Harbour asked Petitioner, who was in the passenger seat, for his name, and Petitioner initially ignored Harbour and then stated that his name was "Frederick Graham." <u>Id.</u> at 10-11. Harbour returned to his patrol car and, finding no record for the name Petitioner provided, asked him again to identify himself. <u>Id.</u> at 11. Eventually, at Harbour's request, Petitioner exited the vehicle and provided an identification card with his real name. <u>Id.</u> at 12-13. Harbour learned that a warrant was outstanding for Petitioner's arrest. <u>Id.</u> at 18, 35. After he secured Petitioner and returned to Deyo's vehicle, Harbour observed the coin bank that complainants reported missing the day before. <u>Id.</u> at 13-15. Deyo and Petitioner denied knowing anything about the bank. <u>Id.</u> at 15-16. Both were placed in custody, an inventory search was conducted, and another officer located a plastic bag of jewelry in the glove compartment of the vehicle. <u>Id.</u> at 16, 18, 34. One of the complainants identified the jewelry at the station as that taken from the apartment. <u>Id.</u> at 17. Deyo was ultimately released. <u>Id.</u> at 32.[4]

Sergeant John Morrow interviewed Petitioner at the Watervliet police station. <u>Id.</u> at 41-43. Petitioner told Morrow that he went to visit his friend named Mark at a residence on 23rd Street. <u>Id.</u> Mark did not answer his door, and Petitioner noticed "a bag with some property in it sitting on the

---

[4] The prosecution advised Respondent that Deyo was not charged with any crime. Resp't's Mem. at 2 n.1.

floor" outside of Mark's door. Id. at 44. Petitioner took the property and left. Id. Morrow testified

that he provided Petitioner Miranda warnings only after Petitioner's statement; however, the court

suspended the hearing, and the prosecution conceded that the statement was custodial and not

admissible on its case-in-chief. Id. at 44-48. Petitioner's counsel agreed with that conclusion. Id. at

48. Counsel argued that Harbour also "exceeded his authority" during the traffic stop, but the court

concluded that Harbour's investigative steps were "appropriate to the information that was clearly

before him." Id. at 47, 49-50. The court denied Petitioner's motion to suppress physical evidence.

Id. at 51.

### B. Jury Trial

A jury trial was held on November 3-4, 2010.[5] Richard Collins testified that he owned the

building at 609-611 23rd Street, and that the bedroom from which his coin box was taken was

located in the back of the residence. Dkt. No. 12-6 ("Trial Transcript") at 134-35, 137-38. He and

his wife, who also lived there, identified their property at the police station the following day. Id. at

141-42.[6] None of the tenants that lived in the other apartments of the building were named Mark,

and he had not leased to anyone named Mark in the previous five years. Id. at 143-44. Collins had

never met Petitioner. Id. at 146. He noted that the police did not dust for fingerprints, and that he

occasionally left both the door to the apartment and the exterior door unlocked for access by his

family. Id. at 147-49. An American flag was displayed from the building, and was "most likely"

there on February 21, 2010. Id. at 151-52.

---

[5] The trial transcript begins at CM/ECF page 61 of Docket Number 12-6. Citations refer to the transcript's original pagination. The trial transcript continues, starting with page 141, at CM/ECF page 1 of Docket Number 12-7.

[6] The parties stipulated to reducing the grand larceny charge to petit larceny. Trial Tr. at 4.

Harbour recounted that he took the burglary report and pulled over Deyo's vehicle, in which Petitioner was a passenger, the following day. Id. at 154-55, 158-60. Harbour saw the coin bank on the floor behind the driver's seat of Deyo's vehicle, and another officer thereafter located jewelry in the glove compartment. Id. at 161-63. He noted that there was no sign of forced entry at the apartment, and complainants reported to Harbour that they left the apartment and building doors unlocked when they left home on the date of the theft. Id. at 166.

Petitioner testified at the grand jury presentation, and his testimony was admitted and read into the record at trial without objection. Id. at 179-80. The transcript reflected that, prior to testifying, Petitioner reviewed and executed a written wavier of immunity, and stated that he understood that his statements could be used against him in other proceedings. Id. at 180-82. According to Petitioner, he and another friend went to visit "Mark" in Watervilet. Id. at 183. Petitioner went to the second-floor apartment where he thought Mark resided and knocked on the door, but received no answer. Id. at 183-84. Petitioner saw "a bag in a box on the floor" and, assuming it belonged to Mark, he picked it up, returned to the vehicle waiting for him around the corner, and placed the items in the car. Id. at 184-85. The bag contained jewelry and "a safe-like box" holding change. Id. at 192. He intended to hold the items for Mark and return them the following day. Id. at 197-98. He noted that a flag, but not an American flag, was in front of the building. Id. at 199.

Petitioner returned the next day with the items still in the vehicle. Id. at 185. Once again, Mark was not there, and, this time, there were "Spanish people in the second-floor apartment." Id. Petitioner asked "the Spanish guy" where Mark was, and the male replied that the previous tenants moved out the week before. Id. When the police subsequently stopped Deyo's car for an equipment

5

violation, Petitioner provided a false name because he knew that there was an outstanding warrant for his arrest from the City of Troy.  Id. at 186.

The prosecution rested, and Petitioner called several witnesses.  Jennifer Ashline testified that she lived at 514 23rd Street in Watervliet and displayed a flag outside the building, but never an American flag.  Id. at 212-13.  Ashline had no knowledge of the incident involving the complainants, who lived a block to the west, but she noted that a person named Mark previously lived in the upstairs apartment of the building next door, 516 23rd Street.  Id. at 215.  She could not recall when he moved out.  Id. at 215.

Todd Senecal, who owned the building located at 516 23rd Street, had a tenant named Mark who lived on the second floor.  Id. at 217-18.  Senecal commenced eviction proceedings against Mark for nonpayment, and estimated that Mark moved out around February 10, 2010.  Id. at 219-20.  Senecal had no prior familiarity with Petitioner.  Id. at 222.  The first-floor tenant of that building, Michael Ramirez, was of Hispanic descent.  Id. at 221.  Ramirez testified that he knew Mark Perry, his upstairs neighbor, as well as Mark's girlfriend, who also resided in the apartment and made jewelry.  Id. at 225-27.  William Bradley, a private investigator retained by counsel, located Ramirez and Ashline, contacted Senecal, and spoke with Perry by phone.  Id. at 231-35.  Perry was "very evasive" and did not provide an address.  Id. at 235.

After the close of evidence, the court held a charge conference and stated its intention to instruct the jury that it "may reach an inference of participation arising from recent exclusive possession of stolen property."  Id. at 239.[7]  Counsel objected to the proposed charge and argued that,

_____

[7] Under New York law, "recent and exclusive possession of the fruits of a crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal." People v. Galbo, 218 N.Y. 283, 290 (1916); see also People v. Baskerville, 60 N.Y.2d 374, 382-83

pursuant to state case law, it was improper to so instruct the jury because Petitioner had an explanation for his possession of the stolen items that was "believable and consistent with innocence." Id. at 240. Counsel also requested a missing witness charge with regard to Deyo. Id. The court denied that request, reasoning that Deyo was "equally accessible" to both parties and was likely to provide testimony favorable to Petitioner. Id. at 241-43.

The jury found Petitioner guilty of both second degree burglary and petit larceny. Id. at 307-08. The court sentenced Petitioner to a term of incarceration of fifteen years with five years of post-release supervision with regard to the burglary conviction, and a concurrent one-year term on the petit larceny conviction. Dkt. No. 12-7 at 190.

### C. Direct Appeal

Petitioner filed a direct appeal and, in a counseled brief, contended that: (1) the trial court erred in its jury instructions because it: (a) should not have given a consciousness of guilt instruction, (b) failed to give a missing witness charge as to Deyo, and (c) should not have instructed the jury regarding recent and exclusive possession; (2) physical evidence seized from the car following the traffic stop should have been suppressed; (3) the evidence was legally insufficient to support the conviction; (4) the verdict was against the weight of the evidence; and (5) the sentence imposed was harsh and excessive. Dkt. No. 12-1 at SR 11-25. The Appellate Division affirmed Petitioner's conviction. People v. Merritt, 96 A.D.3d 1169 (3d Dep't 2012). With regard to his suppression contention, the Appellate Division explained that the validity of the traffic stop was undisputed, and that the police officer was justified in asking Petitioner for his name and asking him to exit the vehicle when a computer search revealed no record of that name. Id. at 1170. As for his claim that

_____

(1983).

the court erred in instructing the jury regarding consciousness of guilt, the Appellate Division

concluded that Petitioner's assertion was unpreserved.  Id. at 1172 (citing Criminal Procedure Law

("CPL") § 470.05(2)).  The Appellate Division found that Petitioner's request for a missing witness

instruction was untimely because it was made after the close of evidence.  Id.  Moreover, the court's

instruction regarding the "permissible inference that may be drawn from the recent and exclusive

possession of the fruits of a burglary" was proper, the Appellate Division concluded, in light of the

evidence presented.  Id.

Petitioner filed a counseled application for leave to appeal to the New York Court of Appeals

and attached the parties' appellate briefs.  In addition, Petitioner filed a lengthy *pro se* letter

application in support, asserting that reversal was required due to purported police misconduct,

prosecutorial misconduct, and ineffective assistance of counsel.  Dkt. No. 12-1 at SR 218-49.  The

New York Court of Appeals denied Petitioner's application on September 24, 2012.  Id. at SR 250.

### D.  Motions to Vacate

After pursuing his direct appeal, Petitioner filed three *pro se* motions pursuant to CPL

§ 440.10 to vacate the judgment of conviction.  Each motion consisted of a lengthy, handwritten,

single-spaced affidavit and memorandum of law which are difficult to decipher.  In his first motion,

sworn on October 31, 2013, petitioner asserted, among other things, that: (1) trial counsel was

ineffective, (2) the prosecutor engaged in misconduct, (3) the prosecutor failed to turn over Brady

and Rosario material, (4) evidence should have been suppressed, and (5) his protection from

compelled self-incrimination was violated.  Dkt. No. 12-2 at SR 267-319.  In a decision and order

dated January 15, 2014, Albany County Supreme Court denied Petitioner's motion *sua sponte*.  Id. at

SR 320-21.  The basis of the court's decision was that Petitioner failed to give the prosecution

"reasonable notice" of his motion as required by CPL § 440.30(1)(a), inasmuch as his notice of motion set a return date of October 31, 2013, the same date his papers were "executed." Id. Because Petitioner "gave no notice at all," the court concluded that it was deprived of jurisdiction to entertain the motion. Id. at SR 321 (citations omitted).

Petitioner filed a second CPL § 440.10 motion in papers dated March 7, 2014, essentially raising the same arguments as those advanced in his first motion. Dkt. Nos. 12-2 to -4 at SR 322-425. Relying on the same authority, the court again concluded on April 9, 2014 that it "had no jurisdiction on the motion" because Petitioner failed to provide "reasonable and proper notice" of the motion to the prosecution. Dkt. No. 12-4 at SR 426-27. Petitioner did not list a return date in his notice of motion and thus "gave no notice" of the motion. Id. at SR 426.

Finally, in his third CPL § 440.10 motion—over one hundred handwritten pages long—Petitioner raised the same arguments as in his previous motions. Dkt. Nos. 12-4 to 12-5, SR 429-553. Construed liberally, Petitioner contends that: (1) his conviction resulted from evidence obtained during an unconstitutional search and seizure; (2) he was threatened and coerced at the traffic stop; (3) several errors rendered the grand jury presentation defective, including: (a) the presentation of perjured testimony and "false" physical evidence, (b) prosecutorial misconduct in eliciting the evidence, (c) requiring Petitioner to testify in restraints, and (d) the grand jury being composed of "all white" jurors; (4) his Miranda rights were violated; (5) his grand jury testimony was improperly admitted at trial in violation of his right against compelled self-incrimination; (6) the prosecution failed to provide Brady and Rosario material; (7) the court's summary denial of a

Dunaway hearing was error;[8] (8) he was deprived of a fair trial by prosecutorial misconduct,

including: (a) the presentation of false evidence and perjured testimony, and (b) the prosecutor's

remarks in summation; (9) police misconduct, prosecutorial misconduct, and judicial bias deprived

him of a due process and a fair trial; (10) pretrial and trial counsel rendered ineffective assistance, in

that they: (a) allowed the prosecution to present petitioner's grand jury testimony at trial, (b) failed to

adequately investigate his case, and (c) failed to cross-examine Morrow at the pretrial hearing; and

(11) the court failed to properly instruct the jury that it could consider a charge of criminal

possession of stolen property as a lesser included offense, resulting in jury confusion. Dkt. No. 12-4

to -5 at SR 452-547. In a decision and order dated September 15, 2014, the court denied petitioner's

motion. Dkt. No. 12-5 at SR 559-64. The court concluded that each of Petitioner's claims "were, or

could have been, raised on" direct appeal, and that the record was adequate to review the claims. Id.

at SR 562 (citing CPL § 440.10(2)(a), (c)).[9] The court also concluded that Petitioner had not

substantiated his claims because he had not submitted any documents or affidavits concerning

matters outside the record. Id. at SR 562-63. Petitioner sought leave to appeal the denial of his

motion, and the Appellate Division denied that application on December 1, 2014. Id. at SR 600.

## III.    PETITION

Construed liberally, Petitioner raises the following grounds for habeas relief in his Petition

---

[8] "[A] Dunaway hearing is used to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial." Montgomery v. Wood, 727 F. Supp. 2d 171, 185-86 (W.D.N.Y. 2010).

[9] As is relevant here, CPL § 440.10(2)(c) requires that a motion to vacate be denied where, "[a]lthough sufficient facts appear on the record . . . to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised . . . no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him."

and Memorandum of law[10]: (1) he was denied a fair trial when his grand jury testimony was admitted at trial; (2) his conviction resulted from evidence obtained during an unconstitutional search and seizure; (3) the court erred in denying Petitioner's request for a <u>Dunaway</u> hearing; (4) pretrial and trial counsel were ineffective because, respectively, they: (a) failed to object to the introduction at trial of Petitioner's grand jury testimony, (b) failed to cross-examine Morrow at the <u>Huntley</u>/<u>Mapp</u> hearing and did not continue the hearing after the prosecution stipulated not to present Petitioner's statement on its case-in-chief, (c) failed to investigate his case, and (d) failed to properly challenge prosecutorial misconduct, police misconduct, and judicial bias; (5) appellate counsel was ineffective; (6) unspecified conflicts of interest existed between Petitioner and his attorneys and his request for new counsel was improperly denied; (7) the prosecution failed to disclose <u>Brady</u> material; (8) the prosecution failed to disclose <u>Rosario</u> material; (9) the "grand or petit jury" was improperly selected and empaneled because the jurors were "all white"; (10) the grand jury presentation was "defective" in that: (a) he was "aggressively" questioned and (b) the prosecutor presented perjured testimony and false evidence in court, and "deceived" and "coerced" the grand jury; (11) he was improperly forced to testify in restraints in the grand jury; and (12) the court erred in its instructions to the jury. Pet. at 4-14; Pet'r's Mem. at 13-25.

## IV. DISCUSSION

### A. Timeliness

As a preliminary matter, Respondent contends that the Petition should be dismissed as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Resp't's

---

[10] For the sake of clarity and ease of discussion, Petitioner's claims have been renumbered and reorganized.

Mem. at 23-28.  For the following reasons, the Court agrees.

AEDPA established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions.  28 U.S.C. § 2244(d)(1).  The one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time in which to seek direct review.  28 U.S.C. § 2244(d)(1)(A);[11] Gonzalez v. Thaler, 132 S. Ct. 641, 652-53 (2012).  For purposes of § 2244(d)(1)(A), a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case.  Thaler, 132 S. Ct. at 653; Saunders v. Senkowski, 587 F.3d 543, 548-49 (2d Cir. 2009).

In this case, the Appellate Division affirmed Petitioner's conviction on June 14, 2012, and the Court of Appeals denied leave to appeal on September 24, 2012.  Merritt, 96 A.D.3d at 1169, lv. denied, 19 N.Y.3d 1027.  Petitioner's conviction became "final" pursuant to AEDPA ninety days later, on December 23, 2012.  He therefore had until December 23, 2013 to file a timely petition.  The Petition was notarized on December 4, 2014, nearly a year after the statute of limitations expired.  Pet. at 16.[12]

_____

[11] Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court if the right was newly recognized and made retroactively applicable, or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence).  28 U.S.C. § 2244(d)(1)(B)-(D).  Petitioner has not alleged that there is any basis upon which the limitations period may begin running from any of those dates.

[12] Pursuant to the "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing.  Houston v. Lack, 487 U.S. 266, 270 (1988); Noble

*1. Statutory Tolling*

The one-year limitations period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); Saunders, 587 F.3d at 548. The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was taken. Saunders, 587 F.3d at 548; Smith, 208 F.3d at 16-17.

As discussed above, Petitioner filed three § 440.10 motions after his direct appeal had concluded. The state court denied Petitioner's third § 440.10 motion, filed June 9, 2014, concluding that Petitioner's claims were, or should have been, raised on direct appeal, and were unsupported by Petitioner's submissions. Dkt. No. 12-5 at SR 562-64. The Appellate Division denied leave to appeal on December 1, 2014. The limitations period had already expired before Petitioner filed his third § 440.10 motion, however, and that motion did not operate to toll the limitations period. 28 U.S.C. § 2244(d)(2); Smith, 208 F.3d at 16-17; see Monroe v. Rock, No. 6:09-CV-6366, 2011 WL 1792926, at *2 (W.D.N.Y. May 10, 2011) (explaining that statutory tolling applies only if a state court application for relief was pending during the one-year limitations period).

Respondent argues that Petitioner's first two § 440.10 motions also did not serve to toll the one-year limitations period because those motions were not "properly filed" within the meaning of

---

v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001). Even assuming that Petitioner gave his Petition to prison officials for filing on the date he signed the Petition, it is untimely.

28 U.S.C. § 2244(d)(2). Resp't's Mem. at 25-26. The state court "denied" both motions on the basis that Petitioner had not provided "reasonable notice" to the prosecution because he had set the return date as the same date that his papers were executed on the first motion (effectively providing no notice), and set no return date at all on his second motion. Dkt. Nos. 12-2 at SR 320-21; 12-4 at SR 426-27. In each case, the court relied upon, *inter alia*, CPL § 440.30(1)(a), which requires that a motion to vacate be "made in writing and upon reasonable notice to the people." The court concluded that in each instance, Petitioner's failure to provide reasonable notice "deprive[d it] of jurisdiction to entertain the motion." Dkt. Nos. 12-2 at SR 321; 12-4 at SR 426 (quoting <u>Burstin v. Pub. Serv. Mut. Ins. Co.</u>, 98 A.D.2d 928, 929 (3d Dep't 1983)). In his Reply, Petitioner asserts merely that the court directed him to refile but did not return his original motion papers to him. Reply at 5.

"An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000), <u>aff'g</u> 199 F.3d 116 (2d Cir. 1999) (citing <u>United States v. Lombardo</u>, 241 U.S. 73, 76 (1916)). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." <u>Id.</u> (footnote omitted). "The burden of establishing entitlement to the benefit of a basis for tolling of the limitations period rests squarely with the petitioner." <u>Fleegle v. Conway</u>, No. 08-CV-0771, 2010 WL 4365659, at *6 (N.D.N.Y. Aug. 5, 2010) (citing <u>Bolarinwa v. Williams</u>, 593 F.3d 226, 231 (2d Cir. 2010)). State law governs whether a pleading filed in state court was "properly filed" for purposes of statutory tolling. <u>See</u> <u>Pace v.</u>

Diguglielmo, 544 U.S. 408, 410-16 (2005) (looking to state court's determination that petitioner's state post-conviction petition was untimely under state law, rendering it not "properly filed"); see also, e.g., Rudin v. Myles, 781 F.3d 1043, 1054 (9th Cir. 2015) ("[W]e are not at liberty to second guess th[e state supreme] court's decision when it was acting on direct appeal of the state post-conviction court's judgment.  The state supreme court concluded that Rudin's petition was untimely under state law, and '[w]hen a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).'") (quoting Pace, 544 U.S. at 414).  Moreover, the condition to filing need not necessarily be mandatory to render a post-conviction application not "properly filed" for AEDPA tolling purposes.  See Allen v. Siebert, 552 U.S. 3, 5-6 (2007) (concluding that petitioner's state postconviction petition was not "properly filed" because the state courts deemed it time barred, even though the courts had discretion in enforcing the time bar); Pace, 544 U.S. at 414; accord Zepeda v. Walker, 581 F.3d 1013, 1018 (9th Cir. 2009) ("[T]he Supreme Court has now twice found state habeas petitions improperly filed under AEDPA even though the relevant condition to filing was either new or unevenly applied.") (citing Siebert, 552 U.S. at 3; Pace, 544 U.S. at 410); Walker v. Norris, 436 F.3d 1026, 1031 (8th Cir. 2006) (finding petitioner's argument that Arkansas' statutory "verification rule" for post-conviction applications was not firmly established "foreclosed by Pace").

Here, the court concluded that Petitioner failed to provide reasonable notice on his motions to the prosecution, as required by CPL § 440.30(1)(a), and declined to reach the merits of Petitioner's deficiently-filed motion papers on that procedural basis.  Failure to provide reasonable notice, or any return date, on a post-conviction application renders that application not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2).  See, e.g., Morales v. Bradt, No. 11-CV-0329, 2013 WL

600176, at *3 (W.D.N.Y. Feb. 11, 2013) (finding petitioner's *pro se* coram nobis motion did not toll

AEDPA limitations period because the Appellate Division rejected the filing on the ground that,

among other things, there was no specified return date); Austin v. Brown, No. 07-CV-0960, 2008

WL 4790783, at *1 n. 1, *3 (E.D.N.Y. Oct. 29, 2008) (finding that petitioner's error coram nobis

motion did not toll limitations period where the Appellate Division rejected the motion because

petitioner did not include proof of service upon opposing parties, did not make the motion

"returnable to the proper Courthouse address," and failed "to include a return date"); see also

Bennett, 199 F.3d at 121 (noting that a "properly filed application" is one submitted in accordance

with "the state's procedural requirements, such as the rules governing notice and the time and place

of filing" (quoting Villegas v. Johnson, 184 F.3d 467, 469-70 (5th Cir. 1999))).[13]  Petitioner's first

two § 440.10 motions were not properly filed, and thus did not serve to toll AEDPA's one-year

limitations period.[14]  In sum, none of Petitioner's three § 440.10 motions provide a basis on which

statutory tolling may be applied in this case.

### 2. Equitable Tolling

AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate

cases."  Holland v. Florida, 560 U.S. 631, 645 (2010).  To warrant equitable tolling, a petitioner must

show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstance stood in his way' and prevented timely filing."  Id. at 649 (quoting Pace, 544 U.S. at

---

[13] Additionally, section 200.4 of New York's Uniform Rules for the New York State Trial
Courts requires that all papers submitted for a criminal court's consideration must show, *inter alia*,
"the return date of any motion to which the papers refer."

[14] In addition to being not properly filed, Petitioner's second § 440.10 motion was also filed
on March 7, 2014, after the AEDPA limitations period had already run.

418); Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir. 2008). The standard for evaluating a claim of extraordinary circumstances is one that focuses not on "the uniqueness of [petitioner's] circumstances," but instead on "the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011); Bolarinwa, 593 F.3d at 231-32. A petitioner claiming extraordinary circumstances must show not only that extraordinary circumstances existed, but that those circumstances "caused him to miss the original filing deadline." Harper, 648 F.3d at 137. Additionally, a petitioner must have acted with "reasonable diligence throughout the period he seeks to toll." Id. at 138 (quoting Belot v. Burge, 490 F.3d 201, 205 (2d Cir. 2007)). If a petitioner did not exercise reasonable diligence after the extraordinary circumstance began, "the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003) (quoting Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001)); Mason v. Pool, 554 F. Supp. 2d 391, 397-98 (W.D.N.Y. 2008).

Petitioner does not assert that he is entitled to equitable tolling, and the Court can discern no reason on the record to apply equitable tolling. Because Petitioner has not identified any extraordinary circumstance causally related to his failure to comply with the one-year limitations period and has not established that he pursued his rights with reasonable diligence, he has not established that equitable tolling is appropriate in this case.

### 3. Actual Innocence

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. § 2244(d)(1) in cases where a petitioner can prove actual innocence. See McQuiggin v. Perkins, 133 S. Ct. 1924, 1928, 1931 (2013); Rivas v. Fischer, 780 F.3d 529, 545 n.25

(2d Cir. 2015). The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare." McQuiggin, 133 S. Ct. at 1928. To be successful, petitioners asserting innocence as a gateway to federal habeas review when the statute of limitations has expired must establish that, "in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see House v. Bell, 547 U.S. 518, 536-37 (2006) ("[Petitioners] asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'") (quoting Schlup, 513 U.S. at 327). In other words, the petitioner must support an actual innocence claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) (quoting Schlup, 513 U.S. at 324). This standard "is demanding and permits review only in the 'extraordinary' case." House, 547 U.S. at 538 (quoting Schlup, 513 U.S. at 327).

Although he asserts in conclusory fashion that he has always maintained that he did not burglarize complainants' apartment, Petitioner has not identified any new, credible evidence of actual innocence to substantiate his position. There is thus no basis warranting consideration of the otherwise time-barred petition. McQuiggin, 133 S. Ct. at 1928, 1931.

In sum, Petitioner's habeas Petition was not timely filed and is therefore dismissed. Even if the Petition was timely filed, however, for the reasons that follow, Petitioner is not entitled to habeas relief.

### B. Standard of Review

Under AEDPA, a federal court may grant habeas corpus relief with respect to a claim

adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. §§ 2254(d)(1), (2); Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 1400 (2011); Premo v. Moore, 562 U.S. 115, 120-121 (2011); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013).

Additionally, AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting Renico, 559 U.S. at 779). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro, 550 U.S. at 473. Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." Id. at 473-74 (quoting § 2254(e)(1)).

   **C.  Exhaustion (Grounds Five, Six, and Nine)**

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(B)(i)-(ii). A petitioner must exhaust his or her claim both procedurally and substantively. Hayes v. Lee, No. 10 Civ. 5134, 2013 WL 4008638, at *14-15 (S.D.N.Y. July 30, 2013). Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam)); Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003) (holding that petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it"). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal, 633 F.3d at 104).

A petitioner satisfies the fair presentation requirement by:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Carvajal, 633 F.3d at 104 (quoting Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir.1982)

(en banc)); see also Baldwin, 541 U.S. at 33 ("Reese, however, has not demonstrated that Oregon law uses the words 'ineffective assistance' in the manner he suggests, that is, as referring only to a federal-law claim.").

"[W]hen a 'petitioner fail[s] to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted). Unexhausted claims may be deemed exhausted if "it is clear that the unexhausted claim is procedurally barred by state law," rendering presentation of the claim in state court "futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997)).

A "procedural default can only be cured by a showing of cause for the default plus prejudice, or a showing of actual innocence." Id. at 91 (citing Coleman v. Thompson, 501 U.S. 722, 748-49 (1991)); see House, 547 U.S. at 536-539; Schlup, 513 U.S. at 327; Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); Rodriguez v. Mitchell, 252 F.3d 191, 204 (2d. Cir. 2001). To establish cause, a petitioner must demonstrate that some objective external factor impeded his ability to comply with the procedural rule at issue. Maples v. Thomas, 132 S. Ct. 912, 922 (2012); Coleman, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. Murray v. Carrier, 477 U.S. 478, 496 (1986); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985).

Several of Petitioner's claims are unexhausted. First, Petitioner appears to contend that the court erred in not giving a missing witness instruction with regard to Morrow, who did not testify at

trial (Ground Twelve). This claim was not properly presented in the state courts, inasmuch as

Petitioner did not request such an instruction at trial or advance this argument on appeal.[15] To the

extent that Petitioner asserts that the petit jury was improperly selected and empaneled (Ground

Nine), that claim also was not raised by trial counsel, on direct appeal, or in Petitioner's CPL

§ 440.10 motion.[16] Petitioner's contention that "conflicts of interest" existed with his attorneys and

that he "was denied a change of counsel" (Ground Six) also was not properly raised at the trial level,

on appeal, or in his motion to vacate the judgment of conviction. Moreover, the state court record

does not reflect that Petitioner ever expressly requested a new attorney, nor does it suggest that any

conflicts of interest existed.

Respondent contends that Petitioner's claim that the trial court erred in charging the jury

regarding "recent and exclusive possession" of the stolen items (Ground Twelve) is also unexhausted

because it was not presented in state court in constitutional terms. Resp't's Mem. at 19. The Court

---

[15] Even if Petitioner had raisede this claim in his third CPL § 440.10 motion, and that motion was the proper vehicle for raising the claim, it would be procedurally barred. As discussed below, the court rejected Petitioner's claims because he unjustifiably failed to assert them on direct appeal pursuant to CPL § 440.10(2)(c), which is an independent and adequate state law ground. Moreover, even if they were not procedurally barred, this claim is without merit. According to his hearing testimony, Morrow's only involvement was speaking with Petitioner at the station and extracting a statement that Petitioner asserted—and the prosecution stipulated—was inadmissible because Morrow had not provided Petitioner Miranda warnings beforehand. Petitioner has not substantiated a violation of his constitutional rights merely because the court did not provide such an instruction as to Morrow.

[16] Petitioner made passing reference to the "all white" grand jury in his third § 440.10 motion. Dkt. No. 12-5 at SR 462. In any event, his claim is also without merit. While a criminal defendant is entitled to a jury "drawn from a source fairly representative of the community," he is "not entitled a jury of any particular composition." Taylor v. Louisiana, 419 U.S. 522, 538 (1975); accord Roman v. Abrams, 822 F.2d 214, 229 (2d Cir. 1987). Petitioner has not established, or even alleged, in this proceeding or in state court, that any minorities were improperly excluded from either the grand jury or panel of prospective trial jurors, or that the prosecution ran afoul of Batson v. Kentucky, 476 U.S. 79 (1986).

agrees. Petitioner's claim concerned whether a state jury instruction was appropriate under the specific facts adduced at trial. On direct appeal, Petitioner relied solely on state case law and failed to alert the Appellate Division to the federal constitutional nature of his claims as required. See Dkt. No. 12-1 at SR 14-16. Addressing Petitioner's claim, the Appellate Division concluded that the instruction regarding permissible inferences to be drawn from Petitioner's recent and exclusive possession of the stolen items was appropriate based on the trial evidence. Merritt, 96 A.D.3d at 1171. This claim also does not "call to mind a specific right protected by the Constitution," or allege "a pattern of facts that is well within the mainstream of constitutional litigation." Carjaval, 633 F.3d at 104; see also Brown v. Senkowski, 152 F. App'x 15, 17-18 (2d Cir. 2005) ("[A]ny fair reading of petitioner's application for leave to appeal to the New York Court of Appeals indicates that petitioner's application rested exclusively on state law grounds, [thus] fail[ing] to alert the New York Court of Appeals as to the federal constitutional nature of petitioner's . . . claim."); Cosby v. LaValley, No. 12-CV-0704, 2014 WL 3734213, at *17 (N.D.N.Y. July 28, 2014) (Kahn, J.) ("Petitioner's appellate counsel did not cite to the federal constitution, nor did she cite to any state cases citing to, or analyzing, federal constitutional principles."); Sudler v. Griffin, No. 12-CV-0367, 2013 WL 4519768, at *4 (N.D.N.Y. Aug. 26, 2013) ("Petitioner failed to exhaust his expert witness claim and his jury charge claim relating to the purpose of summation because he failed to assert them in federal constitutional terms, and neither of these claims 'immediately' brings to mind a right protected by the federal constitution.").

These record-based claims may not now be raised because Petitioner has already pursued his one and only direct appeal in state court. Aparicio, 269 F.3d at 91; Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Petitioner has not established any basis for finding cause, and the Court can discern

none.  See Schlup, 513 U.S. at 314.  Although he raises several technical arguments regarding the conviction, he has not proffered any new evidence that would make a reasonable jury doubt his factual guilt.  See Poindexter v. Nash, 333 F.3d 372, 380 (2d Cir. 2003) (noting that the concept of actual innocence is distinct from the concept of legal innocence, and a petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used . . . in habeas jurisprudence generally").  The procedural default thus bars federal review of these claims.

Petitioner also contends that appellate counsel rendered ineffective assistance (Ground Five).  Pet'r's Mem. at 23-25.  Under New York law, a petitioner must raise a claim of ineffective assistance of appellate counsel in a *coram nobis* motion.  Smith v. Duncan, 411 F.3d 340, 348 n.6 (2d Cir. 2005); McKinney v. Burge, No. 04-CV-1150, 2009 WL 666396, at *8 (N.D.N.Y. Mar. 10, 2009); Horton v. Ercole, 557 F. Supp. 2d 308, 327 (N.D.N.Y. 2008).  Petitioner has not filed a writ alleging that appellate counsel was ineffective, and his claim is thus unexhausted.  There is no time limitation for filing a writ of error *coram nobis* application, however, and he could therefore still pursue this state remedy.  Smith, 411 F.3d at 348 n.6; Fernandez v. Artuz, 402 F.3d 111, 115-16 (2d Cir. 2005).  Despite Petitioner's failure to exhaust the claim, the Court may deny the claim on the merits and with prejudice if the claim is "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277 (2005); see also 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Here, Petitioner's ineffective assistance of appellant counsel claim does not warrant habeas relief, and the Court will therefore dispose of it.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner "must show both deficient performance by counsel and prejudice."  Premo, 562 U.S. at 121; see also Strickland

v. Washington, 466 U.S. 668, 694 (1984).  A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice.  Id. at 693-94.  A claim of ineffective assistance of appellate counsel is subject to the same standard. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986).

Petitioner asserts that appellate counsel was ineffective, but he does not appear to cite any supporting facts or concrete examples of counsel's purported deficiencies.  See Pet'r's Mem. at 23-25.  Counsel filed a brief raising five issues and also filed a reply brief.  Dkt. No. 12-5 at SR 1-20, 204-10.  Counsel contended that the evidence was legally insufficient and that the verdict was against the weight of the evidence, the circumstantial nature of which counsel capably highlighted. Id. at SR 19-23.  Counsel also asserted that the trial court should have suppressed the physical evidence and provided a detailed analysis of Harbour's actions during the traffic stop.  Id. at SR 16-18.  The Court discerns no "significant and obvious issues" that counsel failed to raise while pursuing others that were "clearly and significantly weaker."  Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).  Petitioner's unsubstantiated claim that appellate counsel was ineffective is "plainly meritless" and is thus denied and dismissed.  Rhines, 544 U.S. at 277; see 28 U.S.C. § 2254(b)(2).  In light of this holding, Petitioner's request that the Court stay the Petition so that he may exhaust his claim in state court, made for the first time in his Reply, Reply at 17, is denied.

**D.  Independent and Adequate State Law Grounds (Grounds One, Four, Seven, Nine,**

**and Ten)**

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" <u>Walker v. Martin</u>, 562 U.S. 307, 315 (2011) (quoting <u>Beard v. Kindler</u>, 558 U.S. 53, 55 (2009)); <u>accord</u> <u>Coleman</u>, 501 U.S. at 729; <u>Perez</u>, 510 F.3d at 390. The state law ground may be a dispositive substantive rule, or "a procedural barrier to adjudication of the claim on the merits." <u>Walker</u>, 562 U.S. at 315 (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81-82, 90 (1977)). A state law ground is adequate if it is "firmly established and regularly followed." <u>Id.</u> at 316 (quoting <u>Kindler</u>, 558 U.S. at 60-61). A claim rejected upon an independent and adequate state law ground is procedurally defaulted, absent a showing of cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., petitioner is actually innocent. <u>House</u>, 547 U.S. at 536-39; <u>Schlup</u>, 513 U.S. at 327; <u>Coleman</u>, 501 U.S. at 750. As noted above, federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. <u>Carrier</u>, 477 U.S. at 496.

Several of Petitioner's claims were denied on an independent and adequate state law ground. First, Respondent construes Petitioner's Memorandum of law to assert the same jury instruction claims raised on his direct appeal—namely, that the court erred in instructing the jury on consciousness of guilt and in not giving a missing witness instruction as to Deyo (Ground Twelve). Resp't's Mem. at 51; <u>see</u> <u>Merritt</u>, 96 A.D.3d at 1172. As to Petitioner's claim regarding the consciousness of guilt charge, the Appellate Division concluded on direct appeal that this contention was unpreserved for review. <u>Merritt</u>, 96 A.D.3d at 1172 (citing CPL § 470.05(2)). New York's contemporaneous objection rule has been held to constitute an independent and adequate state law

ground precluding federal habeas review.  Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012) ("If

a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional

error because of his failure to comply with . . . a 'contemporaneous objection' rule, a federal court

generally may not consider the merits of the constitutional claim on habeas corpus review." (quoting

Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990))); Downs v. Lape, 657 F.3d 97, 104-05 (2d Cir.

2011); Garvey v. Duncan, 485 F.3d 709, 714-18 (2d Cir. 2007).  The record reflects that Petitioner

raised no objection or request relative to a consciousness of guilt charge, see Trial Tr. at 291-92, and

thus the Appellate Division's explicit conclusion that his contention on appeal was unpreserved was

not an exorbitant application of the procedural bar.  See Downs, 657 F.3d at 105-07; accord Lee v.

Kemna, 534 U.S. 362, 376 (2002); Cotto v. Herbert, 331 F.3d at 239.  Petitioner has not asserted

cause for the procedural default, nor has he established a fundamental miscarriage of justice.

Maples, 132 S. Ct. at 922; Schlup, 513 U.S. at 325-327; Coleman, 501 U.S. at 753.  His claim is thus

procedurally barred.

With regard to Petitioner's claim that the court should have issued a missing witness

instruction in relation to the prosecution's failure to call Deyo, the Appellate Division found that his

request was properly denied because it was made after the close of all evidence, rendering it

"untimely."  Merritt, 96 A.D.3d at 1172.  The basis of the Appellate Division's conclusion

constituted "a procedural rule that is both firmly established and regularly followed by courts in New

York state presented with factual circumstances akin to those in [Petitioner's] case."  Miller v.

Walker, 413 F. Supp. 2d 251, 259-60 (W.D.N.Y. 2006) (collecting cases); see also Sealy v.

Giambruno, No. 07-CV-1195, 2008 WL 4106947, at *1 (E.D.N.Y. Sept. 4, 2008) (determining that a

rejection of missing witness instruction as untimely constituted an independent and adequate state

ground).[17]

Additionally, Petitioner's contention that the prosecution committed misconduct inasmuch as it presented perjured testimony and false evidence (Ground Ten) was also denied by the court on the basis that his claims were not raised on direct appeal. Dkt. No. 12-5 at SR 562.[18] Similarly, Petitioner's assertions that the prosecution failed to turn over Brady material (Ground Seven);[19] that the grand jury was "all white" (Ground Nine); that counsel was ineffective in failing to cross-examine Morrow and failing to continue the hearing after the parties stipulated that Petitioner's statement was inadmissible on the prosecution's case-in-chief, failing to adequately investigate the

---

[17] In any event, even if not procedurally defaulted, Petitioner's claim is lacking in merit. Petitioner cites no evidence contradicting the trial court's factual findings that Deyo was equally accessible to both parties and in possession of evidence favorable to the prosecution. See Roundtree v. Kirkpatrick, No. 11-CV-6188, 2012 WL 1413054, at *19 (W.D.N.Y. Apr. 23, 2012). Petitioner has not established that the court's ruling was incorrect under state law or, moreover, that it deprived him of due process. See Cupp v. Naughten, 414 U.S. 141, 146 (1973); Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005).

[18] Additionally, as discussed below, to the extent Petitioner argues that perjured testimony was presented to the grand jury in particular, that claim is not cognizable on federal habeas review.

[19] Even if Petitioner's Brady claim were not procedurally barred, he has not substantiated the merits of his claim. "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Although Petitioner asserts that certain documents were suppressed, such as police reports, the inventory list related to the vehicle search, and paperwork related to the chain of custody of the stolen items, at no stage has Petitioner provided any support for the conclusion that those documents were not produced or made available, or how those items would be exculpatory or impeaching. Notably, prior to jury selection, counsel expressly stated that Petitioner would raise "no objection to a chain of custody" regarding the stolen items recovered from the vehicle. Trial Tr. at 4-5. Moreover, trial counsel was plainly aware that Harbour (the only police officer that testified at trial) generated a police report, inasmuch as he questioned Harbour about the contents of the report. Trial Tr. at 165.

case, failing to raise issues of judicial bias and police and prosecutorial misconduct,[20] and allowing his grand jury testimony to be admitted at trial (Ground Four); and that admission of his grand jury testimony deprived him of a fair trial (Ground One); were rejected by the court pursuant to CPL § 440.10(2)(c). Dkt. No 12-5 at SR 562-63. The court reached the same conclusion in relation to Petitioner's claim that the court should have instructed the jury that it could consider a "Lesser offense of Criminal Possession of stolen property." Pet'r's Mem. at 21.[21]

It is well settled that CPL § 440.10(2)(c) constitutes an adequate and independent state ground precluding federal habeas review. Sweet, 353 F.3d at 140-41; Reyes, 118 F.3d at 139; Edsall v. Marshall, No. 08-CV-0673, 2010 WL 4140715, at *5 (W.D.N.Y. Oct. 21, 2010). As discussed above, Petitioner has not established cause for the default or the existence of a fundamental miscarriage of justice. The record does not suggest, and Petitioner does not contend, that the procedural bars were applied exorbitantly by the state courts in this case. See Downs, 657 F.3d at 102; accord Cotto, 331 F.3d at 239. Petitioner's claims are therefore procedurally barred.

### E. Noncognizable Claims (Grounds Eight, Ten, and Eleven)

In relation to the presentation of his case to the grand jury, Petitioner arguably contends that the prosecution presented perjured testimony, that he was improperly forced to testify in restraints, and that he was "aggressively" questioned (Grounds Ten and Eleven). Pet. at 10-11; Pet'r's Mem. at

---

[20] It is worth noting that the only basis Petitioner has cited in support of his claim that the courts were biased against him was the fact that the hearing court credited Harbour's testimony. Pet'r's Mem. at 35.

[21] In any event, Petitioner's claim is lacking in merit. Under New York law, criminal possession of stolen property is not a lesser included offense of second-degree burglary. See McKinney, 2009 WL 666396, at *37 (citing People v. Kohl, 19 A.D.3d 1155, 1156 (4th Dep't 2005).

12-14. As a preliminary matter, "[t]he Supreme Court has never held that state criminal defendants enjoy a federal constitutional right to an indictment." McCray v. New York, 573 F. App'x 22, 24 (2d Cir. 2014) (summary order) (citing Alexander v. Louisiana, 405 U.S. 625, 633 (1972)). Moreover, Petitioner was subsequently convicted following a trial by a petit jury, and these grand jury-related claims are therefore not cognizable on federal habeas review. Davis v. Bradt, No. 12-CV-1843, 2014 WL 576174, at *9 (N.D.N.Y. Feb. 11, 2014) ("Because a state criminal defendant has no federal constitutional right to be charged by a grand jury, irregularities in grand jury proceedings, including the presentation of prejudicial evidence, are not cognizable in a federal habeas corpus petition."); Klosin v. Conway, 501 F. Supp. 2d 429, 436-37 (W.D.N.Y. 2007); see also Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court."); Jaramillo v. Artus, No. 12-CV-1657, 2014 WL 2986926, at *6 (N.D.N.Y. July 2, 2014) (holding that a requirement that petitioner testify in shackles not cognizable on federal habeas review).

Petitioner further claims, in conclusory fashion, that the prosecution failed to turn over unspecified Rosario material (Ground Eight). Pet. at 11; Pet'r's Mem. at 22. "Rosario claims . . . are state law claims, not founded on either the federal constitution or federal laws, which are not cognizable in a federal habeas proceeding." Avery v. Graham, No. 12-CV-1347, 2014 WL 2986910, at *10 (N.D.N.Y. July 2, 2014) (citing Young v. McGinnis, 411 F. Supp. 2d 278, 329 (E.D.N.Y. 2006)); see also Bilal v. Graham, No. 11-CV-4195, 2015 WL 3854705, at *9 (S.D.N.Y. June 22, 2015) ("Rosario violations are based wholly on New York law and do not present a federal constitutional question subject to federal habeas review."). The purported Rosario violations cannot

serve as a basis for federal habeas relief, and Petitioner's claim is therefore denied and dismissed.

**F. Petitioner's Unconstitutional Search and Seizure Claim (Grounds Two and Three)**

Petitioner asserts that he was subjected to an unconstitutional search and seizure during the traffic stop and subsequent arrest and that his conviction resulted from evidence obtained during that stop (Ground Two).  Pet. at 5-8; Pet'r's Mem. at 9-10.  He also arguably asserts that the court should have granted him a Dunaway hearing (Ground Three).  Pet'r's Mem. at 15-17.  It is well settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 482 (1976); accord Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002); Grey, 933 F.2d at 121.  The state is required to provide a petitioner only with the "opportunity" to litigate a Fourth Amendment claim.  McPhail v. Warden, Attica Corr. Fac., 707 F.2d 67, 69-70 (2d Cir. 1983).  Review of a Fourth Amendment claim is therefore available only if the state failed to provide any "corrective procedures" by which the claim could be litigated, or if the petitioner was unable to avail himself of the state's procedures "because of an unconscionable breakdown in the underlying process."  Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977).

The Second Circuit has recognized that New York law provides adequate corrective procedures for redressing Fourth Amendment claims.  See, e.g., Capellan, 975 F.2d at 70 n.1. Petitioner utilized New York's available procedures by seeking, in his omnibus motion, a hearing to determine whether evidence discovered in the vehicle was obtained legally by law enforcement.  A Huntley/Mapp hearing was held, during which police officers testified regarding the circumstances

of the traffic stop, the basis upon which Petitioner was detained, and the manner in which Petitioner later provided a statement.

Petitioner has not asserted that he was "precluded from utilizing" the state's corrective procedures "by reason of an unconscionable breakdown in that process," and, in light of his efforts to advance these claims, the Court can discern no basis for such an assertion in the record. Gates, 568 F.2d at 840. Petitioner contends in his Reply that he "never got a full and fair opportunity to litigate his claim as it was denied before it [was] argued," but it is unclear to what Petitioner refers. Reply at 14.[22] The Court notes that "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72. To the extent that Petitioner asserts he was improperly denied a Dunaway hearing, it appears from his counseled omnibus motion papers that he did not request such a hearing or assert the lack of probable cause for his arrest. See Dkt. No. 12-5 at SR 601-09; Fernandez v. Sheahan, No. 12-CV-2735, 2015 WL 4771958, at *10 (E.D.N.Y. 2015) ("Petitioner experienced no 'unconscionable breakdown' in state process, but simply failed to make a motion to suppress based on lack of probable cause."). In any event, Petitioner's claims in this regard are barred pursuant to Stone v. Powell.

## V.    PETITIONER'S MOTION

In his motion, Petitioner appears to request that: (1) the Court order Respondent, the Town of Watervliet Police Department, and the County of Albany to produce records of "the actual detailed

---

[22] To the extent Petitioner intends to refer to the fact that counsel did not cross-examine Morrow, he provides no indication as to how that fact constituted an unconscionable breakdown in the process. As discussed above, Morrow's role in the case consisted of interviewing Petitioner, and the parties stipulated that the statement Petitioner gave would not be admitted at trial. To that extent, Petitioner was successful at the Huntley hearing.

proof supporting the incidental events of the arresting officer(s)" present during the traffic stop preceding his arrest; (2) an evidentiary hearing be held; and (3) counsel be assigned.  Disc. Mot.; see also Disc. Mem. at 14-39.  Petitioner has also submitted, as exhibits to his Motion, copies of the traffic ticket issued to Deyo and police reports related to Petitioner's arrest, which he appears to have obtained as a result of requests to the City of Watervilet pursuant to New York's Freedom of Information Law ("FOIL").  Exs. at 1-43.

In essence, Petitioner largely requests disclosure by citation to the Criminal Procedure Law and asks the Court to direct "the Government" to produce "any and all information" related to his criminal prosecution.  Disc. Mem. at 10-15.  He asserts, as he did in his Petition, that Brady and Rosario material was not disclosed before trial and that counsel was not provided with documents related to the traffic stop.  Id. at 17, 21-25.  Petitioner appears to suggest that material beyond that provided to him pursuant to his FOIL requests—including items that the City of Watervilet stated it did not possess—must exist and that he provided a convincing alibi at trial.  Id. at 16-21.  He continues to contend, as he did in state court and in his Petition, that he was subjected to an unconstitutional search and seizure, and that compelling production of documents and holding a hearing will bear this fact out.  See id. at 15-35.  Much of his Motion is devoted to reiterating his Petition arguments, with reference to documents he already possesses.

Because his Petition was not timely filed, Petitioner's Motion is denied.  In any event, even if his Petition was timely, Petitioner would not be entitled to the relief he seeks in his Motion. Pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, a habeas court may order discovery, including depositions, where a party demonstrates good cause. Rule 6, Rules Governing Section 2254 Cases in the United States District Courts; see also Bracy v.

_Gramley_, 520 U.S. 899, 904 (1997) (holding that petitioners in habeas proceedings are "not entitled to discovery as a matter of ordinary course," but that discovery may be ordered pursuant to the discretion of the court and upon a showing of good cause). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." _Bracy_, 520 U.S. at 908-09 (quoting _Harris v. Nelson_, 394 U.S. 286, 300 (1969)); _see Lopez v. Superintendent of Five Points Corr. Fac._, No. 14-CV-4615, 2015 WL 1300030, at *7 (S.D.N.Y. Mar. 23, 2015) ("Good cause requires more than '[g]eneralized statements regarding the possible existence of discoverable material.'" (quoting _Pizzuti v. United States_, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011))); _Mills v. Lempke_, No. 11-CV-0440, 2012 WL 1574749, at *5 (W.D.N.Y. May 3, 2012) ("Generalized statements regarding the possibility of the existence of discoverable material cannot yield 'good cause.'"). Courts may also direct the parties to "expand the record by submitting additional materials relating to the petition," in addition to the records referenced in Rule 5(c). Rule 7(a), Rules Governing Section 2254 Cases in the United States District Courts.

Here, Petitioner has not shown that any items related to his broadly-stated requests would support his habeas Petition or assist him in demonstrating entitlement to habeas relief. _Bracy_, 520 U.S. at 904 (stating that before deciding whether discovery should be allowed pursuant to Rule 6, the district court must identify the "essential elements" of the petitioner's habeas claims the requested discovery would support (quoting _United States v. Armstrong_, 517 U.S. 456, 468 (1996))); _see Toolasprashad v. Tyron_, No. 12-CV-0734, 2013 WL 1560176, at *3 (W.D.N.Y. Apr. 11, 2013) (denying petitioner's motion for discovery because "documents responsive to [the discovery demand] would not expose relevant evidence that would advance this habeas proceeding").

Petitioner's motion papers primarily concern his continued assertion that he was the subject of a Fourth Amendment violation, a claim that is barred from habeas review and thus would not entitle him to relief. Moreover, for the reasons discussed above, the Court has concluded that Petitioner had a full and fair opportunity to litigate his claim. See Perez v. Ercole, No. 09-CV-1985, 2010 WL 5475649, at *14 (E.D.N.Y. Dec. 30, 2010) ("[T]his Court has determined that Perez had a full and fair opportunity to litigate his Fourth Amendment probable cause claim, which is the subject of the discovery he now seeks. Accordingly, his motion for production of documents and expansion of the record is denied.").

Petitioner is also not entitled to an evidentiary hearing. In cases where a petitioner's federal habeas claims were presented to the state courts and rejected on the merits, a district court's ability to take new evidence is strictly limited. The Supreme Court has held:

> [R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court.

Cullen, 131 S. Ct. at 1398. The Supreme Court further held that "evidence introduced in federal court has no bearing on § 2254(d)(1) review." Id. at 1400. "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." Id. Additionally, by its own terms, section 2254(d)(2) restricts federal habeas review to the state court record. 28 U.S.C. § 2254(d)(2) (contemplating relief based on an "unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*") (emphasis added).

Here, Petitioner's habeas claims, particularly his Fourth Amendment claim, were presented to, and rejected by, the state courts. Petitioner received a pretrial hearing regarding the propriety of police conduct at the traffic stop and his arrest. The Appellate Division reviewed in detail the actions taken by law enforcement at the traffic stop. Merritt, 96 A.D.3d at 1170. With regard to his assertions of police and prosecutorial misconduct, the court concluded that Petitioner's claims were entirely unsubstantiated by his submissions on his motion to vacate the judgment. Dkt. No. 12-5 at SR 4-5. Moreover, a hearing is not warranted because Petitioner's Fourth Amendment claim is barred from habeas review pursuant to Stone v. Powell, and his other claims are either procedurally defaulted or not cognizable. Schriro, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Here, review of the state court decisions is limited to "the state-court record." Cullen, 131 S. Ct. at 1399.

Finally, with regard to Petitioner's request that an attorney be assigned, "there is no constitutional right to representation by counsel in habeas corpus proceedings." United States v. Yousef, 395 F.3d 76, 77 (2d Cir. 2005) (per curiam). In light of the Court's determination that the Petition is untimely and that, in any event, Petitioner is not entitled to an evidentiary hearing, appointment of counsel is unnecessary for that purpose. See Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts. The interests of justice do not otherwise warrant appointment of counsel. See 18 U.S.C. § 3006A(a)(2)(B). Petitioner's request is therefore denied.

## VI.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition (Dkt. No. 1) is **DENIED and DISMISSED** in its entirety; and

it is further

ORDERED, that Petitioner's Motion for discovery, an evidentiary hearing, and the

appointment of counsel (Dkt. No. 14) is **DENIED with prejudice**; and it is further

ORDERED, that no Certificate of Appealability ("COA") shall issue because Petitioner

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C.

§ 2253(c)(2) requires;[23] and it is further

ORDERED, that the Clerk of the Court serve a copy of this Decision and Order on the

parties in accordance with the Local Rules; and it is further

ORDERED, that the Clerk shall provide Petitioner with copies of the unpublished decisions

cited herein.

**IT IS SO ORDERED.**


DATED:      September 29, 2015
            Albany, New York


_____
            Lawrence E. Kahn
            U.S. District Judge


---

[23] Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); see also Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).